■ JUDY TIENKEN, Appellant, v BENEDICTINE HOSPITAL et al., Respondents. [974 NYS2d 166]—

Rose, J. Appeal from an amended order of the Supreme Court (Melkonian, J.), entered September 23, 2011 in Ulster County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

Pursuant to Mental Hygiene Law article 9, plaintiff was involuntarily committed to a mental health unit operated by defendant Benedictine Hospital based upon, among other things, information from her brother, defendant Todd Tienken. He reported that she had made bizarre claims and threats against family members and others, she was mentally ill and in need of treatment, she had verbally threatened to kill him and had swerved her car at him and, on a separate occasion, she had swerved her car at his ex-girlfriend. After a retention hearing, Supreme Court found that, although she was suffering "from some sort of mental problem," the hospital had failed to prove by clear and convincing evidence that she was a physical threat to herself or anyone else. Nevertheless, before releasing plaintiff, Supreme Court issued an order of protection prohibiting her from contact with her mother, brothers and her own children. Following her release, plaintiff commenced this action alleging causes of action against the hospital for assault, battery, false imprisonment, negligence, medical malpractice and deprivation of civil rights under 42 USC § 1983, and against her brothers

for intentional infliction of emotional distress. After joinder of issue and discovery, defendants moved for summary judgment dismissing the complaint and plaintiff cross-moved for partial summary judgment. Supreme Court granted defendants' motions and plaintiff now appeals.

We affirm. Pursuant to the Mental Hygiene Law, an individual may be temporarily confined on an involuntary basis where he or she has "a mental illness for which immediate observation, care, and treatment in a hospital is appropriate and which is likely to result in serious harm to himself[, herself] or others" (Mental Hygiene Law § 9.39 [a]). We agree with Supreme Court that all of plaintiff's claims against the hospital are, in effect, claims for false imprisonment, inasmuch as they are all based upon allegations of unlawful seizure and involuntary confinement (*see Lorensen v State of New York*, 249 AD2d 762, 763 n 2 [1998], *lv denied* 92 NY2d 807 [1998]; *Higgins v City of Oneonta*, 208 AD2d 1067, 1069 [1994], *lv denied* 85 NY2d 803 [1995]; *Ferretti v Town of Greenburgh*, 191 AD2d 608, 610-611 [1993], *appeal dismissed* 82 NY2d 748 [1993], *lv denied* 82 NY2d 662 [1993]; *see also Antonious v Muhammad*, 250 AD2d 559, 559-560 [1998], *lv dismissed and denied* 92 NY2d 913 [1998]). These claims all turn upon a finding of medical malpractice because "[c]ommitment pursuant to Mental Hygiene Law article 9 is deemed privileged in the absence of medical malpractice" (*Tewksbury v State of New York*, 273 AD2d 376, 376 [2000], *lv denied* 95 NY2d 766 [2000]; *see Capellupo v Nassau Health Care Corp.*, 97 AD3d 619, 622 [2012]; *Ferretti v Town of Greenburgh*, 191 AD2d at 610). Accordingly, the hospital was required to make a prima facie showing that its medical treatment did not depart from accepted standards of care (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324-325 [1986]; *Olinsky-Paul v Jaffe*, 105 AD3d 1181, 1182 [2013]; *LaFountain v Champlain Val. Physicians Hosp. Med. Ctr.*, 97 AD3d 1060, 1061 [2012]).

In support of its motion, the hospital submitted the affidavit of Jeffrey DeLisle, a psychiatrist who provided his opinion that the decision to involuntarily admit plaintiff was justified by the information that plaintiff had made death threats against family members. DeLisle explained that the initial emergency health assessment was performed in accordance with the applicable standard of care, noting that the admitting physician appropriately assessed and documented plaintiff as delusional, psychotic and bipolar based upon a review of plaintiff's history and recent behavior, including paranoid, delusional and angry outbursts. Moreover, DeLisle explained that the decision to retain plaintiff was correct and in conformance with applicable

standards, noting plaintiff's "impulsivity," lack of judgment and the significant risk that she posed to herself and others.

In addition, the hospital offered plaintiff's medical records, which, among other things, contained the report of Rebecca Raphael, a staff psychiatrist who explained in detail her diagnosis of plaintiff's mental illnesses, noted that plaintiff "had expressed homicidal ideation towards family members" and described plaintiff as harboring paranoid delusions and having poor insight and impaired judgment. Raphael's report reviewed and considered, among other things, plaintiff's complete family, social and medical history and noted that the record contains all of the requisite certifications and documentation. In light of this, we agree that the hospital met its initial burden by offering expert evidence to establish that its decision to admit plaintiff and its medical treatment of her did not depart from accepted standards of care and followed the requirements of the Mental Hygiene Law (*see* Mental Hygiene Law § 9.39; *Alvarez v Prospect Hosp.*, 68 NY2d at 324-325; *Horth v Mansur*, 243 AD2d 1041, 1042-1043 [1997]).

To rebut the hospital's prima facie showing, plaintiff offered expert affidavits from a psychiatrist and a nurse. Supreme Court refused, however, to consider these affidavits because, despite the hospital's demand for expert disclosure, plaintiff did not disclose these experts' identity until approximately six months after she had filed her note of issue and certificate of readiness, and then only in response to the hospital's summary judgment motion. Nor did she provide any excuse, much less good cause, for the nondisclosure. Given these circumstances, we are unwilling to say that Supreme Court abused is discretion to preclude plaintiff's offer of expert testimony (*see* CPLR 3101 [d] [1] [i]; *Cramer v Spada*, 203 AD2d 739, 740 [1994], *lv denied* 84 NY2d 809 [1994]; *Zarrelli v Littauer Hosp.*, 176 AD2d 1181, 1182 [1991]; *see also Yax v Development Team, Inc.*, 67 AD3d 1003, 1004 [2009]; *Colon v Chelsea Piers Mgt., Inc.*, 50 AD3d 616, 617 [2008]; *Safrin v DST Russian & Turkish Bath, Inc.*, 16 AD3d 656, 657 [2005]). In the absence of admissible expert evidence to rebut the hospital's prima facie showing, Supreme Court properly granted summary judgment to the hospital (*see King v Gregruss Mgt. Corp.*, 57 AD3d 851, 853 [2008], *lv denied* 13 NY3d 707 [2009]; *Colon v Chelsea Piers Mgt., Inc.*, 50 AD3d at 617).

Nor did Supreme Court err in finding that no issues of fact exist regarding plaintiff's sole claim against her brothers for intentional infliction of emotional distress. The brothers met their initial burden of demonstrating that they did not engage

in extreme and outrageous conduct or the intentional or reckless infliction of emotional distress, and plaintiff's conclusory assertions to the contrary fail to raise a question of fact on these elements of her claim (*see Callas v Eisenberg*, 192 AD2d 349, 350 [1993]; *see generally Howell v New York Post Co.*, 81 NY2d 115, 126 [1993]).

Peters, P.J., Lahtinen and Egan Jr., JJ., concur. Ordered that the amended order is affirmed, without costs.